UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KELVIN D. GOODE,

    Plaintiff,

v.                                        Civil Action No. 3:07cv189

MRS. GRAY, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, Kelvin D. Goode, previously was incarcerated in the Riverside Regional Jail ("RRJ"). On April 2, 2007, Goode filed a complaint pursuant to 42 U.S.C. § 1983 asserting that the following RRJ employees, Mrs. Gray, Sgt. Creel,[1] Sgt. Sykes, and Darnley R. Hodge, Sr. (collectively "Defendants"), violated his constitutional rights. The matter is before the Court on Defendants' motion for summary judgment. Jurisdiction is proper under 28 U.S.C. § 636(c).

### I. Preliminary Matters

Defendants moved for summary judgment on March 4, 2008. By order dated April 1, 2008, the Court denied Goode's Motion for Extension of Time because Goode's motion did not contain a proper certificate of service. The Court advised Goode that he could resubmit a proper motion within eleven (11) days. Goode never resubmitted his motion for an extension of time. Nevertheless, on June 18, 2008, Goode submitted a response to the motion for summary

---

[1] Although Goode filed his Complaint against "Sgt. Creely," all pleadings submitted by Defendants indicate that this defendant's proper name is Sgt. Creel.

judgment.[2] Although Goode's response to the motion for summary judgment is technically untimely, Defendants have not demonstrated that they will suffer prejudice from the consideration of the response. Accordingly, in the interest of justice, the Court will consider Goode's June 18, 2008 response to the motion for summary judgment.

## II. Goode's Claims

The Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Thus, the Court does not act as the inmate's advocate, *sua sponte* developing claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett*, 775 F.2d at 1278.

Here, Goode filed his complaint on the standardized forms for filing an action under 42 U.S.C. § 1983. In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (*citing* 42 U.S.C. § 1983). Although Goode

---

[2]The Court considers a prisoner's habeas corpus petition filed on the date he delivers his petition to prison authorities for mailing to the court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

provides a somewhat discursive narrative of his incarceration in the Riverside Regional Jail, he fails to identify any specific constitutional right that was abridged by Defendants' conduct.[3] *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (noting that Federal Rule of Civil Procedure 8 requires a plaintiff to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957))). Defendants reasonably perceived Plaintiff to contend that Defendants violated Plaintiff's right under the Eighth Amendment by placing Plaintiff in excessive periods of solitary confinement or restrictive custody. Although Defendants have moved for summary judgment with respect to Plaintiff's other factual allegations, such as availability of the inmate handbook and disciplinary hearing events, they do not identify the constitutional right implicated by those factual allegations, much less offer a reasoned explanation under relevant law as to why the claim is subject to dismissal. Defendants have not done so, in part, because it is difficult to discern what constitutional rights Goode invokes when he mentions those issues.[4] In light of the foregoing circumstances, the Court deems Goode only to have fairly raised claims under the Eighth Amendment.[5] *See Beaudett*, 775 F.2d at 1278 ("[*Gordon v. Leeke* ] does not require those courts to conjure up

---

[3] Goode does make an incoherent reference to the Double Jeopardy Clause. U.S. Const. amend. V ("No person . . . shall . . . be subject for the same offence to be twice put in jeopardy of life or limb.") "My underwear and clothes fall off of me and swallow me up. Mrs. Gray breaks the law by invoking the Double Jeopardy rule which is unconstitutional and care less about the inmates welfare. I don't sleep and talk aloud in my sleep again." (Compl. 4b.)

[4] In response to Defendants' motion for summary judgment, the only legal authority Plaintiff cites pertains to the Eighth Amendment. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 11-12.) Plaintiff did not suggest the Defendants had misperceived the constitutional right implicated by his factual allegations.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

questions never squarely presented to them. District judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments . . . .").

Should Goode wish to pursue additional claims against Defendants he must file a particularized complaint within fifteen (15) days of the date of entry hereof, in conformance with the instructions below:

1. At the **very top** of the particularized pleading, Plaintiff is directed to place the following caption in all capital letters "PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:07CV189."

2. The first paragraph of the particularized pleading must contain a list of defendants. Thereafter, in the body of the particularized complaint, Plaintiff must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Thereafter, in separately captioned sections, Plaintiff must clearly identify each constitutional right violated. Under each section, the Plaintiff must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. Plaintiff shall also include a prayer for relief.

3. The particularized pleading will supplant the original complaint. The particularized pleading must stand or fall of its own accord. Plaintiff may not incorporate by reference statements in the original complaint or prior submissions.

### III. Defendants' Motion For Summary Judgment

Summary judgment must be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue

of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In support of their motion for summary judgment, Defendants have submitted affidavits and copies of pertinent records from the RRJ. Plaintiff's response to the motion for summary judgment is merely notarized.[6] The response is not sworn under oath nor made under penalty of perjury and thus is inadmissible for summary judgment purposes. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (emphasizing that unsworn argument does not constitute evidence), *cert. denied*, 127 S. Ct. 553 (2006). In light of the foregoing principles and submissions, the followings facts are established for purposes of the present motion for summary judgment.

---

[6] Goode's documents were simply acknowledged before a notary in Kentucky. The Supreme Court of Kentucky recently explained that, "an acknowledgement is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn as to the truth of the contents of the document. While both acknowledgments and jurats are usually notarized, they are not the same thing." *Matthews v. Commonwealth*, 163 S.W.3d 11, 25 (Ky. 2005).

### A. Summary of Pertinent Facts

Goode was incarcerated at RRJ from December 17, 2006, to July 31, 2007. (Minton Aff. ¶ 10.) RRJ officials transferred Goode from the Classification pod to general population at minimum security status on December 21, 2006. (Minton Aff. ¶ 17.)

#### 1. First Incident

On or about December 26, 2006, Goode threatened Officer J. M. Evans. (Compl. 4; Minton Aff. ¶ 18 & Ex. 1.) RRJ officials placed Goode in pre-hearing segregation, a maximum security custody classification. (Minton Aff. ¶¶ 19-20.) Inmates in segregation are classified at maximum security custody status and enjoy the same privileges as general population (medium security custody status), except that they spend all time alone. (Minton Aff. ¶ 20.)

On January 2, 2007, Sgt. Creel, Core Sergeant at RRJ and Disciplinary Chairperson when Sgt. Sykes is unavailable, conducted a hearing on the incident. (Compl. 4; Minton Aff. ¶ 8 & Ex. 1.) After Goode had the opportunity to explain what happened, Sgt. Creel found Goode guilty of threatening an officer and sanctioned him with seven days lockdown, credited as time served, and loss of privileges for fourteen days.[7] (Compl. 4; Minton Aff. ¶ 21.) Per RRJ's policy, the Classification Committee reviewed Goode's maximum security custody status on January 9, 2007. (Minton Aff. ¶ 27.) The Classification Committee recommended that Goode be returned to general population for time served at medium security custody status. (Minton Aff. ¶ 27.) Goode returned to general population on January 16, 2007, at medium security custody status. (Minton Aff. ¶ 27.)

---

[7] Goode served seven days in pre-hearing segregation, from December 26, 2006, to January 2, 2007. He lost privileges for fourteen days, from January 3, 2007, to January 16, 2007.

## 2. Second Incident

On February 3, 2007, Goode assaulted his cellmate. (Minton Aff. ¶ 28.) RRJ officials charged Goode with two major violations: RRJ Infractions #100, Assault, and #119, Creating a Security Disturbance Causing Staff to Respond. (Minton Aff. ¶¶ 25, 28.) On that same day, RRJ officials placed Goode in pre-hearing segregation. (Minton Aff. ¶ 29.)

On February 6, 2007, the Classification Committee recommended that Goode be segregated at maximum custody security status with a review in seven days. (Minton Aff. ¶ 34.) On February 12, 2007, RRJ officials conducted a disciplinary hearing and sanctioned Goode to ten days lockdown with credit for nine days served, and loss of privileges for fourteen days. (Minton Aff. ¶ 31 & Ex. 1.)

Following the second incident, RRJ officials placed Goode on maximum security custody status on February 6, 2007. (Minton Aff. ¶ 33.) Goode remained in maximum security custody status until April 7, 2007. (Minton Aff. ¶ 42.) The Classification Committee reviewed Goode's security status classification on February 21, 2007, February 27, 2007, March 6, 2007, March 13, 2007, March 20, 2007, and March 27, 2007. (Minton Aff. ¶¶ 35-40.) On April 7, 2007, RRJ officials reclassified Goode to medium security custody status and returned him to the general population. (Minton Aff. ¶ 42.)

## 3. Third Incident

On April 23, 2007, Goode assaulted another cellmate. (Minton Aff. ¶ 43.) RRJ officials charged Goode with RRJ Infraction #100, Assault. (Minton Aff. ¶ 43 & Ex. 1.) As a result, the Classification Committee reclassified Goode to maximum security custody status and placed him in segregation for ninety days. (Minton Aff. ¶¶ 44, 47.) The Classification Committee reviewed

Goode's classification status on May 1, 2007, and May 8, 2007, recommending that Goode remain at maximum security custody status. (Minton Aff. ¶¶ 48-49.) The Classification Committee reviewed Goode's classification status again on May 16, 2007, and May 22, 2007, each time recommending that Goode remain at maximum security custody status. (Minton Aff. ¶¶ 51-52 & Ex. 1.)

RRJ officials conducted a disciplinary hearing on May 3, 2007. (Minton Aff. ¶ 45.) RRJ officials sanctioned Goode to ten days lockdown with credit for time served. (Minton Aff. ¶ 45.)

The Classification Committee reviewed Goode's classification status on June 5, 2007, and found Goode non-compliant because on May 29, 2007, RRJ officials observed Goode passing items. (Minton Aff. ¶ 56 & Ex. 1.) Goode remained at maximum security custody status. On June 12, 2007, the Classification Committee reviewed Goode's classification status and recommended Goode remain at maximum security custody status. (Minton Aff. ¶ 57.) On June 19, 2007, the Classification Committee again recommended that Goode remain at maximum security custody status because RRJ officials found Goode with contraband on June 12, 2007. (Minton Aff. ¶ 58.)

On June 26, 2007, the Classification Committee discussed a behavior contract with Goode.[8] At this time, it continued recommending that Goode remain at maximum security custody status. (Minton Aff. ¶ 59.)

On July 5, 2007, the Classification Committee recommended returning Goode to general population (medium security custody status), pursuant to a behavior contract. (Minton Aff. ¶ 60 & Ex. 1.)

---

[8] On June 4, 2007, Goode requested a behavior contract. (Minton Aff. ¶ 54.)

On July 9, 2007, Goode agreed to and signed a behavior contract. (Minton Aff. ¶ 61 & Ex. 1.) RRJ officials reclassified Goode to medium security custody status and he remained with the general population until his release on July 31, 2007. (Minton Aff. ¶ 61 & Ex. 1.)

### B. Analysis

In order to survive summary judgment, Goode must allege and prove facts demonstrating an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). A two-part test is used to determine whether the deprivation complained of presents a constitutional violation. Goode must show: "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). "[T]he first showing requires the court to determine whether the deprivation of the basic human need was *objectively* 'sufficiently serious,' and the second requires it to determine whether *subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (second alteration in original) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 1380 n.3 (*quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). The resulting harm to the inmate is particularly pertinent in assessing whether a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.*; *see White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993).

9

The United States Court of Appeals for the Fourth Circuit has concluded that "the isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable." *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999). Goode has not introduced any evidence that he suffered a serious or significant physical or mental injury as a result of his intermittent periods of restrictive confinement within the jail. *See Strickler*, 989 F.2d at 1381; *see also In re Long Term Admin. Segregation*, 174 F.3d at 472 (noting that "[d]epression and anxiety are unfortunate concomitants of incarceration"). Thus, Goode has failed to satisfy the objective component for his Eighth Amendment claims. Accordingly, Goode's Eighth Amendment claims will be DISMISSED.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment shall be GRANTED with respect to Goode's Eighth Amendment claims. Goode has fifteen (15) days from the date of entry hereof to file a particularized complaint. In the absence of a particularized complaint strictly in conformance with the Court's directions, the Court will enter a final order dismissing the action.

An appropriate Order shall issue.

/s/ MHL
M. Hannah Lauck
United States Magistrate Judge

Date: 2/2/09
Richmond, Virginia